IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHEN DISTRICT OF MISSISSIPPI
EASTERN DIVISON

**MICHAEL JORDAN**                                                                     **PLAINTIFF**

**VERSUS**                                                   **CAUSE NO.: 2:16-cv-70-KS-MTP**

**WAYNE COUNTY, MISSISSIPPI and**
**SHERIFF JODY ASHLEY in his individual and**
**Official capacity**                                                                 **DEFENDANTS**

**WAYNE COUNTY, MISSISSIPPI AND SHERIFF JODY**
**ASHLEY'S MOTION FOR SUMMARY JUDGMENT**

Come now Wayne County, Mississippi and Sheriff Jody Ashely, by and through counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, submit their Motion for Summary Judgment. In support of the same, the moving defendants would show as follows:

1.      This suit arises out of the March 14, 2016, stop of Plaintiff while traveling to work by Wayne County Sheriff Jody Ashley. *CM/ECF Doc. No. 1*. Plaintiff contends that Sheriff Ashley did not have probable cause to stop his vehicle and search the same. *Id*. Rather, Plaintiff asserts that Sheriff Ashley stopped and searched him because he refused to support Ashley during his campaign for Sheriff of Wayne County. *Id.*

2.      Jody Ashley ran for Sheriff of Wayne County in 2015. *Ashley Aff.* ¶ 2 (A copy of which is attached hereto as Exhibit "A"). Ashley's opponent was the incumbent Sheriff, Darryl Woodson. During the campaign, Sheriff Ashley visited with a multitude of the citizens of Wayne County in order to ask for their vote. *Ashley Depo.*, p. 7. (A copy of which is attached hereto as Exhibit "B"). Significantly, during the campaign, Sheriff

Ashley went to Plaintiff's place of business to seek his vote but Plaintiff was not present that day. *Plaintiff Depo.*, 19. (A copy of which is attached hereto as Exhibit "C"). Ashely spoke with some of Plaintiff's employees but because Plaintiff was not present, called Plaintiff later on the phone. *Id.*; *Ashley Depo.*, 6.

3.  According to Plaintiff, he informed Sheriff Ashley that he would support him but Darryl Woodson was a friend of his and he would have to support Woodson. *Plaintiff Depo.*, 19; *Ashley Depo.*, 6-7. Plaintiff testified at his deposition that upon hearing that Plaintiff could not support him Sheriff Ashley simply said "no problem" that he understood. *Plaintiff Depo.*, 20.

4.  Sheriff Ashley ultimately won the Sheriff's race and took office in January, 2016. *Compl.* ¶ 8. Subsequently, on Monday, March 14, 2016, Plaintiff ate lunch at the Quickway curb store with his brother. *Plaintiff Depo.*, 35. After lunch Plaintiff headed to his office at 145 Azalea Drive. *Id.* at 35-36. Plaintiff was driving his 2008 Ford F-350 which he had picked up from the shop the day before. *Id.* at 37. The truck had been in Rodney Pickens shop since June or July the prior year. *Id.*

5.  While traveling down Azalea Drive, Plaintiff passed by Sheriff Ashley who was stopped at the intersection of Court Street and Azalea. *Plaintiff Depo.*, 41. According to Plaintiff, seconds later he looked back and saw that Sheriff Ashley was behind him and has his blue lights on. *Id.* Plaintiff pulled to the side of the road thinking Ashley wanted to pass him but when Ashley pulled over behind him; rather than stay put, Plaintiff pulled back "out into the road" and traveled further down the road to his place of business. *Id.* at 41, 47-49.

6.      Plaintiff finally stopped at the gate to his business and Sheriff Ashley pulled in behind him. *Id.* at 49.  According to Plaintiff, Sheriff Ashley exited his vehicle, approached Plaintiff's vehicle and asked him for his driver's license. *Id.* Plaintiff asserts that he gave Sheriff Ashley his license and told Ashley "You know me. This is my shop here. You've been here." *Id.* at 49-50. Ashely then purportedly said "Well, I need to see your license." *Id.*

7.      Meanwhile, additional officers arrived on the scene including Chief Deputy Mike Mozingo and City of Waynesboro officer Courtney Taylor. *Id.* Sheriff Ashley walked away from Plaintiff and his vehicle and, eventually, gave Plaintiff's driver's license to Chief Deputy Mozingo. *Id.* at 52.

8.      Plaintiff asserts that Sheriff Ashley then approached him and said that he needed to search his vehicle. *Pl. Depo.*, 53-54.  Plaintiff questioned the need for a search and alleges that when he did so Sheriff Ashley told him that he was "going to search" the vehicle or he was going to take Plaintiff to jail. *Id.* At that time, another officer told Plaintiff that the search "was normal…they always search people when they pull them over…" *Id.* at 55-56. The officer also allegedly told him "if you go ahead and let us go ahead and search it, we'll let you go, won't hold you up any longer." *Id.* After hearing this, Plaintiff voluntarily allowed officers to search his vehicle. *Id.* Officers searched the vehicle and, finding no contraband, let Plaintiff go. *Id.* at 64. According to Plaintiff, the entire stop took between fifteen (15) and (20) minutes—including the search. *Id.*

9. Plaintiff contends that he was subjected to (1) unlawful seizure; (2) unlawful search; (3) deprivation of due process[1]; (4) deprivation of Equal Protection; and a violation of his right to (5) freedom of speech. *Compl.*, 4-5.

10. Sheriff Ashley's decision to stop Plaintiff was "justified at its inception" and, therefore, did not constitute an illegal seizure. In this case, Sheriff Ashley clearly had reasonable suspicion that Plaintiff was committing a crime via a traffic violation. *Ashley Depo.*, 16. In particular, both Sheriff Ashley and his passenger, Brother Steve Smith pastor from First Baptist Church, personally observed Plaintiff cross the centerline on Azalea Drive. *Ashley Depo.*, 16-17; *Smith Aff.* ¶ 4 (A copy of which is attached hereto as Exhibit "D"). More specifically, as previously noted, Sheriff Ashley and Brother Smith were stopped at the intersection of Court Street and Azalea Drive as they headed to a safety checkpoint. While at the stop sign, Plaintiff passed by in front of them as Sheriff Ashely was turning north towards Hwy 84 East. *Id.* Sheriff Ashely turned north and was traveling behind Plaintiff, who he did not recognize and both he and Brother Smith personally observed Plaintiff "swerving" and driving in a careless manner. *Ashley Depo.*, 17; *Ashley Aff.* ¶ 5; *Smith Aff.* ¶ 4. Both men have given sworn testimony that they saw Plaintiff cross over the center line on Azalea Drive. *Id.* In Mississippi, Section 63–3–1213 makes careless driving a crime stating that

---

[1] Although Plaintiff asserts a clam for a violation of his due process rights as a result of his temporary detention and the search of his vehicle, such a claim does not sound under the Fourteenth Amendment. To the contrary, those claims sound under the Fourth Amendment. See, *Francis v. Cty.*, No. CV H-14-2943, 2016 WL 6662275, at *4 (S.D. Tex. Nov. 10, 2016))( Plaintiffs' allegations that defendants' actions deprived them of liberty without due process of law by violating their rights to be free from unreasonable searches and seizures, excessive use of force, and false arrest, are claims that must be analyzed under the Fourth Amendment).

4

> Any person who drives any vehicle in a careless or imprudent manner, without due regard for the width, grade, curves, corner, traffic and use of the streets and highways and all other attendant circumstances is guilty of careless driving.

Miss. Code Ann. § 63-3-1213. Based on his observations as well as those of Brother Smith, Sheriff Ashley clearly had reasonable suspicion that Plaintiff violated state traffic laws.

11. Notably, after Sheriff Ashley initiated his blue lights to stop Plaintiff, the Plaintiff failed to yield to the blue lights. In fact, Plaintiff stated in his deposition that he initially pulled over thinking Sheriff Ashley was attempting to pass him but when he realized that Ashley was pulling him over, he admitted to re-entering the roadway and continuing towards his place of business. *Pl. Depo.*, p. 41. Plaintiff testified that rather than yield to the blue lights, he decided to travel further down Azalea Drive to his place of business where there would be witnesses to his traffic stop. *Id.* at 41, 47-48. Plaintiff further elaborated on this in his deposition as follows:

> Q. Why did you not yield to the blue lights there?
>
> A. Because I had a lot of phone calls of people telling me the sheriff said he was going to get you if that's the last thing he do…

Plaintiff's failure to immediately yield to Sheriff Ashley's blue lights is a further violation of Mississippi's traffic laws and provided an additional basis to temporarily detain him. See, Miss. Code Ann. § 63–3–809(1).

12. Plaintiff admitted at his deposition that his license tag on the vehicle he was driving was expired. *Pl. Depo.*, p. 36. Driving without a valid license tag is a

5

criminal violation in Mississippi. See, Miss. Code. Ann. § 27-19-131 (any operator who shall cause to be operated upon the highways of this state, without having paid the privilege license tax or fee required by the provisions of this article, or without having the license tag shall be guilty of a misdemeanor). Even though this was not the basis which Sheriff Ashley articulated for initiating a traffic stop, it may still serve as probable cause for the same. See, *Davidson v. City of Stafford, Texas*, 848 F.3d 384, 392 (5th Cir. 2017), citing, *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009)(probable cause may be for any crime and is not limited to the crime that the officers subjectively considered at the time they perform an arrest).

13. Given the above, Sheriff Ashley's decision to stop Plaintiff was "justified at its inception" and, therefore, did not constitute an illegal seizure.

14. Additionally, as the record evidence in this matter demonstrates, immediately upon getting Plaintiff stopped, Sheriff Ashley approached Plaintiff's vehicle and asked for his license—an appropriate police activity under the circumstances. *Pl.Depo.*, p. 49; *Ashley Depo.* p. 19; *Ashley Aff.*, ¶ 6. The traffic stop was extended for officers to search Plaintiff's vehicle; however, the extension was by consent. *Ashley Aff.*, ¶ 6. In particular, Sheriff Ashley sought Plaintiff's permission to search his truck and Plaintiff provided the same. After the search was completed Plaintiff was allowed to leave the stop. *Id.*; *Pl Depo.*, p. 66-67. According to Plaintiff, the entire stop and search took approximately twenty (20) minutes, an imminently reasonable time. *Id.*

15. Plaintiff's temporary detention based on a traffic violation was not a constitutional violation and, thus, his unlawful detention claim must be dismissed.

16. Significantly, even if Plaintiff could demonstrate that Sheriff Ashely violated his Fourth Amendment rights in stopping him for a traffic violation, Ashley's conduct was objectively reasonable under the circumstances. Sheriff Ashley was objectively reasonable in believing that he had probable cause to stop Plaintiff based on a traffic violation. As previously noted, Sheriff Ashley personally observed Plaintiff swerving and driving carelessly. *Ashley Aff.* ¶ 5. In particular, Sheriff Ashley observed Plaintiff crossing the centerline. *Id*. This observation alone is sufficient here. Even if Sheriff Ashley was mistaken in his belief that Plaintiff crossed the centerline, a mistake would still be objectively reasonable under the circumstances as the objectively reasonable standard does not require that a suspect "has in fact violated the law." *United States v. Montes-Hernandez*, 350 F. App'x 862, 867 (5th Cir. 2009)(To have an objectively reasonable suspicion, an officer does not have to determine that a suspect has in fact violated the law.). Rather, as the phrase clearly states, an officer must have only a reasonable suspicion that a traffic violation has occurred. Sheriff Ashley clearly had such suspicion.

17. Significantly, the reasonableness of Sheriff Ashley's suspicion is bolstered by the fact that Brother Smith has also given sworn testimony that he observed the Plaintiff cross the center line with his truck. *Smith Aff.* ¶ 4.

18. In summary, even if this Court were to determine that Plaintiff suffered a Fourth Amendment violation when he was temporarily detained based on a traffic

violation, Sheriff Ashely is still entitled to qualified immunity as his conduct was objectively reasonable under the circumstances.

19.     Plaintiff also asserts that his vehicle was unlawfully searched after officers stopped and detained him. *Compl.* ¶ 14-16. More specifically, Plaintiff claims that soon after he was stopped Sheriff Ashley stated "I need to search this vehicle." *Pl. Depo.*, 54. Plaintiff alleges that he responded by questioning Sheriff Ashley why he needed to search the vehicle and that Sheriff Ashley told him "he was going to search the vehicle." *Id.* Plaintiff contends the he again asked "what reason" the Sheriff had for searching the vehicle and that Sheriff Ashley then stated that he was going to search the vehicle or take Plaintiff to jail[2]. *Id.*

20.     Next, Plaintiff alleges that a City Narcotics Officer named Johnny Smith, who was present at the scene, "pulled [him] to the side…[a]nd told" Plaintiff that "that's just what they do whenever they pull people over, they search them" and if he would "go ahead and let [them] search" the truck they would let him go. *Pl. Depo.*, 55-56.  No search had begun when this conversation took place. Only after Plaintiff told Officer Smith that officers could search his vehicle did the search take place.  *Id.*

21.     Here, Plaintiff contends that when the Sheriff told him he needed to search his vehicle, he responded by asking why. *Pl. Depo.*, p. 54.  He did not refused to allow the search. *Id.*  Plaintiff alleges that in response to his questioning why his vehicle would be searched, Sheriff Ashley told him "he was going to search the vehicle," which

---

[2] Sheriff Ashley has testified that he did not tell Plaintiff he was going to take him to jail but, rather, informed him that he could go to jail for a traffic violation. *Ashley Depo.*, p. 23-24.

prompted Plaintiff to again ask him the reason for the search. *Id.* Again, Plaintiff did not refuse to allow the search he merely questioned the reason for the same. *Id.* In response, Plaintiff contends that he said "Y'all are wrong for what you're doing. That's not right to pull people over illegal and violate their rights," to which the Sheriff purportedly replied "I'm going to search your vehicle or I will take you to jail." *Id.* Still though, no search was conducted at that time. Rather, according to Plaintiff, City of Waynesboro Narcotics Officer Johnny Smith "pulled [him] to the side" where it was just Plaintiff and Officer Smith having a conversation and Officer Smith told him "he's been in law enforcement 25 years and all kind of things like that and that's just what they do whenever they pull people over, they search them." *Id.* at 56. Furthermore, Plaintiff states Officer Smith told him "If you go ahead and let us o ahead and search it, we'll let you go, won't hold you up any longer." *Id.* At that point, after his conversation with City of Waynesboro Officer Smith, Plaintiff consented to the search. *Id* After obtaining consent to search, City of Waynesboro officers—not Sheriff Ashley—searched Plaintiff's vehicle. *Id.*; *Ashely Aff.* ¶ 6. Given that Sheriff Ashely neither personally searched the vehicle he cannot be held liable for any alleged illegal search. "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983); see also *Borden v. Jackson County*, 2012 U.S. Dist. LEXIS 134400 (S.D. Miss. Aug. 24, 2012)(holding that a plaintiff must demonstrate personal participation in alleged unconstitutional conduct). Furthermore, Sheriff Ashley never gave any order to his officers to search the vehicle and no officer searched the vehicle until **after**, per Plaintiff's testimony, City of Waynesboro and Plaintiff had a private conversation after

9

which Plaintiff consented to the search. *Id*. at 55-56. Given that Plaintiff consented to the search, his illegal search claim fails.

22. The Equal Protection Clause of the Fourteenth Amendment directs that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburn Living Ctr.*, 473 U.S. 432 (1985). To demonstrate a traditional Equal Protection claim, a plaintiff must prove that a state actor intentionally discriminated against him because of membership in a protected class. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 227 (5th Cir. 2012). The Supreme Court has also "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. Of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000). A prerequisite to any Equal Protection claim is that the plaintiff proves that similarly situated individuals were treated differently. That is, the Plaintiff needs to identify other similarly situated individuals who were treated differently. *Bell v. S. Delta Sch. Dist.*, 325 F. Supp. 2d 728, 741 (S.D. Miss. 2004).

23. Here, Plaintiff cannot do so. To the contrary, Plaintiff has failed to produce any evidence that any person similarly situated to him was treated differently. The same is fatal to his Equal Protection claim.

24. Plaintiff argues that his stop was in retaliation for his not voting for Sheriff Ashley in the 2015 election. *Compl.*, ¶ 38. The First Amendment "prohibits ... adverse governmental action against an individual in retaliation for the exercise of protected speech activities." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). To establish a claim

10

for retaliation, a Plaintiff must prove that: (1) he was engaged in a constitutionally protected activity, (2) that the defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that protected activity, and (3) that the defendant's adverse actions were substantially motivated by the plaintiff's exercise of constitutionally protected conduct. *McLin v. Ard*, 2013 WL 5798989, *4 (M.D. La. Oct. 28, 2013) (citing *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002)).

25. Here, Plaintiff was engaging in constitutionally protected speech when he decided who to support for Sheriff; however, he cannot prove either of the other two prongs required for First Amendment retaliation claim. More specifically, Plaintiff cannot demonstrate that being pulled over for a traffic violation would chill a person of ordinary firmness. A short traffic stop is a routine fact of life for many as opposed to an extended stop or an arrest. Brief traffic stops with probable cause, however, would not chill a person of ordinary firmness. *Harmon v. Beaumont Indep. Sch. Dist.*, No. 1-12-CV-571, 2014 WL 11498077, at *4 (E.D. Tex. Apr. 7, 2014), aff'd, 591 F. App'x 292 (5th Cir. 2015), citing, *Benson v. McKinney*, Civil No. 07-0672 (W.D. La. Apr. 16, 2009); *Brooks v. City of W. Point, Miss.*, 639 F. App'x 986, 989 (5th Cir. 2016)(arrest for cursing a police officer was an injury that would chill the speech of a person of ordinary firmness); Keenan v. Tejeda, 290 F.3d 252, 259 (5th Cir. 2002)( detention for more than thirty minutes for a minor traffic violation, which was later dismissed, while the office had their guns pointed at the plaintiffs would chill person of ordinary firmness).

26.     Furthermore, and more importantly, in this case Plaintiff cannot demonstrate that Sheriff Ashley's decision to pull him over was "substantially motivated" by Plaintiff's exercise of a constitutionally protected right. In fact, Plaintiff cannot prove that this voting for the Sheriff's opponent provided ANY motivation for the Sheriff to pull him over.  This is simply because the record evidence makes it abundantly clear that Sheriff Ashley did not know who he was pulling over until well after he made the traffic stop. *Ashley Depo.*, p. 19; *Ashely Aff.*, ¶ 7. In fact, Sheriff Ashley did not know who he had pulled over until he got to the driver's side window of Plaintiff's vehicle **and** Plaintiff handed him his driver's license. *Id*. at 19. It was only after viewing Plaintiff's driver's license that Sheriff Ashley realized he had pulled over Plaintiff.  This sequence of events makes it impossible for Sheriff Ashley to have been motivated to pull Plaintiff over due to Plaintiff's alleged vote in the Sheriff's election. Just as importantly, Sheriff Ashley believed the Plaintiff had supported him in the election. *Id.* at 6.   While Sheriff Ashley was apparently wrong in thinking Plaintiff supported him, he certainly did not know Plaintiff voted for his primary opponent and, therefore, had no reason to retaliate against Plaintiff and make a traffic stop. *Id*.

27.     When an officer has probable cause to seize an individual, "the objectives of law enforcement take primacy over the citizen's right to avoid retaliation." *Keenan v. Tejeda*, 290 F.3d 252, 261–62 (5th Cir. 2002). Here Sheriff Ashley had probable cause to believe the driver in front of him—who turned out to be Plaintiff—violated the traffic laws of the State of Mississippi and, therefore, the objectives of law enforcement are primary in this case. *See Crostley v. Lamar Cty.*, 717 F.3d 410, 422–23 (5th Cir. 2013); *see*

*also* *392 *Cooper v. City of La Porte Police Dep't*, 608 Fed.Appx. 195, 199 (5th Cir. 2015) ("[O]fficers are entitled to qualified immunity unless there was not probable cause for the arrest and a reasonable officer in their position could not have concluded that there was probable cause for the arrest." (citing *Crostley*, 717 F.3d at 422–23)). Not only did Sheriff Ashley and passage Brother Steve Smith observe Plaintiff cross the center line, Plaintiff admits that his license tag was expired. The Plaintiff's expired tag is sufficient probable cause to pull Plaintiff over and negate any retaliation claim. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009)( This probable cause may be for any crime and is not limited to the crime that the officers subjectively considered at the time they perform an arrest.).

28.    Plaintiff also asserts claims against Sheriff Ashley in his "official capacity" which is just another way of suing Wayne County. As noted hereinabove, Plaintiff contends he was illegally stopped; however, the record evidence makes it clear that Plaintiff's stop was permissible pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968). Even more importantly, the stop was permissible pursuant to even higher standard of probable cause given that Plaintiff's license plate was expired at the time in question. *Pl. Depo.*, p 36. Because an underlying constitutional violation is an essential element of municipal liability and Plaintiff has wholly failed to make such a showing, his claim against Sheriff Ashley in his official capacity for an illegal stop fails. *Becerra v. Asher*, 105 F.3d 1042, 1047-1048 (5th Cir. Tex. 1997).

29.    Even had Plaintiff shown a constitutional violation for an illegal stop, he cannot prove the third element of municipal liability—that the municipal policy or

13

custom was the "moving force" of the constitutional deprivation. The record evidence in this matter makes it clear that Sheriff Ashley had no idea who he was pulling over when he stopped Plaintiff, only that he and Brother Steve Smith both observed the driver cross the center line. It cannot be understated that as it concerns this third element, Plaintiff must show that the municipal action was taken with the requisite degree of culpability—deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision *Valle*, 613 F.3d at 542. Such culpability is simply not present here. At worst, Sheriff Ashely could have been mistaken that Plaintiff crossed the center line (although Brother Smith made the same observation) and a mistake is simply insufficient to meet the deliberate indifference requirement. *Piotrowski*, 237 F.3d at 579.

30. Plaintiff also contends that Sheriff Ashley should be held liable in his official capacity for purportedly illegally searching his vehicle. This, again, is simply incorrect. Plaintiff has failed to demonstrate a constitutional violation in connection with the search; rather, he voluntarily consented to the same. Even were that not the case, Plaintiff has failed to provide any evidence that Wayne County had a policy, practice or custom of engaging in unconstitutional searches[3]. Finally, as with the alleged illegal stop, Plaintiff cannot demonstrate that any unconstitutional search was carried out with deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision *Valle*, 613 F.3d at 542. To the

---

[3] The single incident exception which can apply when a final policymaker engages in illegal conduct does not apply here as Sheriff Ashley did not actually engage in the search; rather, other officers executed the same.

14

contrary, Sheriff Ashely and the other officers on the scene believed they had obtained voluntary consent to search the vehicle and any misapprehension of that point would amount to nothing more than negligence.

31.   Like the two prior claims, Plaintiff's Equal Protection claim fails for lack of a constitutional violation. That is, Plaintiff has completely failed to provide competent summary judgment evidence that he was treated differently than a similar situated citizen who did vote for Sheriff Ashley.  Furthermore, Plaintiff has failed to provide evidence of any policy, practice or custom of the County to violate citizens equal protection rights or that requisite culpability standard required for the same.

32.   Finally, Plaintiff's First Amendment claim must fail as Plaintiff has not provided competent summary judgment evidence that Sheriff Ashley pulled him over for failing to vote for him for Sheriff.  To the contrary, the record evidence not only demonstrates that Sheriff Ashley was unaware of who he had pulled over until Plaintiff showed him his driver's license but that Sheriff Ashley had probable cause to make the stop.  In addition, there is no evidence that the final policymaker—Sheriff Ashley—had the requisite degree of culpability when he made the traffic stop.  There is no evidence, merely Plaintiff's conjecture, that Sheriff Ashley stopped him because he voted for Ashley's opponent.  To the contrary, the record evidence proves that Sheriff Ashley believed Plaintiff supported him.

WHEREFORE, PREMISES CONSIDERED**,** for the reasons stated herein above and in Wayne County, Mississippi and Sheriff Jody Ashley's Memorandum of Authorities in Support of Their Motion for Summary Judgment, the moving Defendants

respectfully request that this Court enter summary judgment in their favor and summarily dismiss the claims against them.

**DATE:** April 3, 2017

Respectfully submitted,

**WAYNE COUNTY, MISSISSIPPI AND SHERIFF JODY ASHLEY**

BY:   /s/*William R. Allen*
            One of Their Attorneys

WILLIAM R. ALLEN (MSB #100541)
JESSICA S. MALONE (MSB #102826)
Allen, Allen, Breeland & Allen, PLLC
214 Justice Street
P. O. Box 751
Brookhaven, MS 39602
Tel: 601-833-4361
Fax: 601-833-6647
wallen@aabalegal.com
jmalone@aabalegl.com

## **CERTIFICATE**

I, the undersigned of Allen, Allen, Breeland & Allen, PLLC, hereby certify that on this day, I electronically filed the foregoing Wayne County, Mississippi and Sheriff Jody Ashley's Motion for Summary Judgment with the Clerk of the Court using the ECF system which gave notice of same to the following:

> Daniel M. Waide, Esq.
> Johnson, Ratliff & Waide, PLLC
> 1300 Hardy St.
> P.O. Box. 17738
> Hattiesburg, MS 39404
> dwaide@jhrlaw.net

This the 3rd day of April, 2017.

/s/*William R. Allen*
OF COUNSEL