IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**MICHAEL JORDAN**                                                                                               **PLAINTIFF**

**VERSUS**                                                      **CIVIL ACTION NO.: 2:16cv70-KS-MTP**

**WAYNE COUNTY, MISSISSIPPI and**                                                              **DEFENDANT**
**SHERIFF JODY ASHLEY**

<u>RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT</u>

COMES NOW MICHAEL JORDAN, hereinafter "Jordan," by and through counsel, and makes this, his Response in Opposition to Defendants' Motion for Summary Judgment, and would show unto this Court as follows, to-wit:

<u>INTRODUCTION</u>

The Defendants' Motion for Summary Judgment must be denied, in part, because the Defendants used coercion and threats of arrest to unduly influence Jordan into consenting to a search of the vehicle. The Defendants profiled Jordan, erroneously believed he was some sort of drug dealer, and used threats of arrest to coerce consent for the search of the truck.

Making all reasonable inferences in favor of Jordan, as the non-movant, the Court must find that a genuine issue of material fact exists regarding the alleged grounds for the stop of Jordan's truck, and deny Defendants' motion regarding the unlawful stop and seizure of Jordan. Likewise, the Defendant received invalid and coerced consent from Jordan, based wholly upon coercion and threats of incarceration if Jordan did not consent to the search of his truck, depriving Jordan of his right to be free from unlawful searches and seizures. Therefore, the Court must deny the Defendants' Motion for Summary Judgment [27], as argued herein.

## CONCESSIONS

Jordan would concede that discovery has not shown sufficient evidence for Jordan to proceed on his claims made under the First Amendment regarding Jordan's support for Defendant Ashley's opponent in the sheriff's election. Likewise, Jordan, in good faith, would concede his claims under the equal protection clause of the 14th Amendment based upon the same reasoning.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine dispute as to a material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Rogers v. Bromac Title Servs., L.L.C.,* 755 F.3d 347, 350 (5th Cir. 2014) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court is to view the evidence and reasonable inferences drawn from the evidence in the light most favorable to the nonmoving party, here [Tarjilyn]. *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008). A dispute "is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "A fact issue is 'material' if its resolution could affect the outcome of the action." *Id.*[1]

---

[1] A dispute is "material" if its resolution could affect the outcome of the action. *Anderson*, 477 U.S. at 248. The Court must view the evidence and draw inferences in the light most favorable to the nonmoving party. Id. at 255; *Tolan v. Cotton*, 134 S. Ct. 1861, 1862 (2014) (per curiam); *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005).

## FACTUAL ALLEGATIONS

Undisputed facts

The facts are undisputed that Defendant Ashley requested Jordan's support in the Wayne County Sheriff's election, and that Jordan declined to support Defendant Ashley because of Jordan's relationship with another candidate. It is also undisputed that Jordan is a black male and Jody Ashley is a white male.

Defendant Ashley admitted in his deposition that he told Jordan he could "go to jail over citations" when Jordan was questioning the search of the truck. **Exhibit B, Deposition of Jody Ashley, p. 24.**

Disputed facts

On or about March 14, 2016 Jordan was lawfully operating his 2008 Ford F-350 when Jordan was pulled over by Defendant Ashley. **Exhibit A, Deposition of Michael Jordan p. 34;41-43.** Defendant Ashley alleged that Jordan was guilty of "careless driving," which is disputed by Jordan. At no time did Jordan cross the center line as alleged by Defendant Ashley. **Exhibit A, Deposition of Michael Jordan p. 46.**

After Jordan realized that Defendant Ashley was trying to pull him over, Jordan pulled up to the gate of his shop and stopped his vehicle. **Exhibit A, Deposition of Michael Jordan p. 49.** Defendant Ashley walked up to the truck and asked Jordan for his license and after a brief conversation, Jordan gave Defendant Ashley his license. **Exhibit A, Deposition of Michael Jordan p. 51-53.**

Defendant Ashley then returned to Jordan's truck and asked to search the truck, even though the only allegation made for the stop was an alleged traffic violation. **Exhibit A, Deposition of Michael Jordan p. 53.** Jordan asked several times why the Defendants desired to

search the truck, even stating to Defendant Ashley, "Y'all are wrong for what you're doing. That's not right to pull people over illegal and violate their rights." **Exhibit A, Deposition of Michael Jordan p. 54.** Defendant Ashley responded, "I'm going to search your vehicle or I will take you to jail." **Exhibit A, Deposition of Michael Jordan p. 54. See also Exhibit B, Deposition of Jody Ashley, p. 23-24.**

At this point during the stop, another officer pulled Jordan to the side and instructed Jordan that "this is just what they do," search people when they are pulled over[2]. **Exhibit A, Deposition of Michael Jordan p. 56.** Following the threats and coercion, to avoid going to jail unlawfully, Jordan involuntarily consented to the search. **Exhibit A, Deposition of Michael Jordan p. 56.** The Defendants then proceeded to search the truck, opening doors and the hood of the truck, embarrassing Jordan who began to feel like a common criminal. **Exhibit A, Deposition of Michael Jordan p. 56-58.** The Defendants found nothing in the search of the truck.

The search lasted approximately 20-30 minutes, and Jordan was not issued any citations by the Defendants, further illustrating the Defendants' lack of reasonable suspicion. Soon after the unlawful search, Jordan experienced issues with elevated blood pressure and headaches from the stress Jordan experienced during the unlawful stop and search. **Exhibit A, Deposition of Michael Jordan p. 82-83.** Jordan's doctor put him on a special prescription medication following the stop to help keep Jordan's blood pressure under control. **Exhibit A, Deposition of Michael Jordan p. 83**. When Jordan went back to the doctor five (5) months later, Jordan's blood pressure had gone back down to its normal levels. **Exhibit A, Deposition of Michael Jordan p. 84.** Since the unlawful stop and search, Jordan has experienced issues with focus and

---

[2] The issue of "this is just what they do" may also constitute an issue of a violation of constitutional rights as a policy and practice of the Defendant.

concentration because of continuous thoughts of being unlawfully stopped and searched by the Defendants, and fear of future issues. **Exhibit A, Deposition of Michael Jordan p. 85.**

## ARGUMENT

### a. Defendant Ashley is a final policy maker for the County

The Fifth Circuit has held that, under *Monell*, "a single decision may create municipal liability if that decision were made by a final policymaker responsible for that activity." *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996) (*quoting Brown v. Bryan Cnty., Okla.*, 67 F.3d 1174, 1183 (5th Cir. 1995)). Under Mississippi law, Defendant Ashley, as sheriff of Wayne County, is a final policymaker for the purpose of imposing municipal liability under 42 USC 1983.

When a final policy maker makes the relevant decision, and when that decision is within the sphere of the policy maker's final authority, "the existence of a well-established, officially-adopted policy will not insulate the municipality from liability." *Gonzalez v. Ysleta Independent School District*, 996 F.2d 745, 754 (5th Cir.1993). Sheriffs in Mississippi are final policymakers with respect to all law enforcement decisions made within their counties. *Huddleston v. Shirley*, 787 F.Supp. 109, 112 (N.D.Miss.1992); Miss.Code Ann. § 19–25–1, et seq.

### b. Jordan disputes the alleged grounds for the initial stop of Jordan's truck

For the purposes of the Fourth Amendment, a traffic stop constitutes a seizure of the driver and any passengers in a vehicle. *Brendlin v. California*, 551 U.S. 249, 257–58 (2007). "An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 809-10 (1996).

The Defendants claim that the stop of Jordan's truck, a 1998 F-350, painted orange and being driven by a black male, Jordan, was for allegedly crossing the center line. The facts simply do not support the Defendants' allegations and are disputed.

Jordan has testified, adamantly that he did not cross the center line, creating a genuine issue of material fact. **Exhibit A, Deposition of Michael Jordan p. 46.** According to Jordan, he recalled passing Defendant Ashley while the defendant was stopped at an intersection. **Exhibit A, Deposition of Michael Jordan p.41.** In less than ten (10) seconds, Defendant Ashley had flown up to Jordan and had put on his blue lights and was initiating a stop of Jordan's truck, although at the time Jordan had no reason to believe he was being stopped. **Exhibit A, Deposition of Michael Jordan p. 41; Exhibit C, Marked Map of Stop**. The timing of these events simply do not support the Defendants' allegations.

The Defendants have presented two affidavits, one from Defendant Ashley and one from a friend and passenger in the patrol car, Steve Smith [28-4;28-1]. Both affidavits stated that they turned onto Azalea Drive and followed behind Jordan's truck, which cannot be true. According to Jordan, Defendant Ashley did not "follow" behind him but sped up to him with blue lights on. **Exhibit A, Deposition of Michael Jordan p. 41.** Jordan's assertions are supported by a simple analysis of distance, time, and speed. The Defendants' evidence is questionable, because this matter only deals with a matter of a few hundred feet. **Exhibit A, Deposition of Michael Jordan p. 46-47; Exhibit C, Marked Map of Stop.**

Jordan testified that he pulled over at his shop approximately 300 feet from where Jordan originally pulled over to allow Defendant Ashley to pass him, because Jordan wanted to ensure witnesses to the stop because of rumors Jordan had heard about Defendant Ashley. **Exhibit A, Deposition of Michael Jordan p. 43-47.** Jordan placed an "x" on a map during his deposition to

indicate where Jordan originally pulled over. **Exhibit C, Marked Map of Stop.** It was an extremely short distance[3] from Court Street, where Defendant Ashley was stopped, to where Jordan first saw Defendant Ashley behind him initiating the stop. **See Exhibit C, Marked Map of Stop.**

Jordan was traveling approximately 35 mph[4], or 51.33 feet per second, making it impossible for the Defendant to have time to pull in behind and catch up to Jordan, follow Jordan, witness an alleged center line crossing, and initiate a stop of Jordan, all within about 2-300 feet of the intersection, or less than six seconds based upon the speed limit of 35 mph. **Exhibit A, Deposition of Michael Jordan p. 46-47.** Defendant Ashley would have had to be driving carelessly and speeding simply to catch up to Jordan, much less have time to "travel behind" Jordan for any amount of time as alleged by the Defendants' affidavits. The math simply does not allow the time for the Defendants' affidavits to be plausible[5].

The more probable and plausible inference based upon the undisputed timing, is that Defendant Ashley intended to stop[6] Jordan when pulling out of the intersection, and Defendant began to initiate a stop of Jordan before ever getting behind Jordan, necessitating that Defendant Ashley pursue Jordan at a high rate of speed before catching up to Jordan. The math simply is not in the Defendants' favor in regards to timing. Six Seconds is far too short of a time frame for Defendants' allegations to be true and/or plausible.

The Defendants' use of "careless driving" as pretext for the stop is nothing more than false pretext for the stop. Defendants' counsel tries to identify other reasons that the Defendant

---

[3] At most, a couple hundred feet
[4] **Exhibit A, Deposition of Michael Jordan p. 46.**
[5] In order for the Defendant to catch up to Jordan prior to initiating the stop, Defendant would have had to travel 70 mph for 6 seconds simply to catch Jordan within those same 6 seconds and within 300 feet.
[6] Defendant Ashley was looking for a drug bust

could have stopped Jordan, such as an expired tag, but the Defendant did not notice the expired tag at the time of the stop, and therefore, Defendants' attempts to muddy the waters with "could have" scenarios are misplaced and cannot serve as a basis for the stop.

Because the facts surrounding the stop of Jordan are genuinely disputed, Defendants' Motion for Summary Judgment must be denied.

### c. The Defendants' search of Jordan's truck was unlawful because the Defendant used threats and coercion to obtain an invalid consent from Jordan

The law is well settled that consent to a search cannot be obtained through threats, intimidation, or coercion. *See Schneckloth v. Bustamonte,* 412 U.S. 218 (1973). Defendants argue that because Jordan "consented" to the search of his truck, Defendants cannot be held liable for the unlawful search of the truck. Defendants fail to note that Jordan's consent was invalid and unconstitutional because the Defendants used threats and coercion to obtain the consent. Jordan was pulled over for allegedly "crossing the center line," a mere minor traffic violation which did not warrant a search of Jordan's vehicle, even if unlawful searches were simply part of the Defendants' regular course of business.

As noted by the Defendants' own brief, police officers may detain a person for investigative purposes if they can point to "specific and articulable facts" that give rise to reasonable suspicion that a particular person has committed, is committing, or is about to commit a crime. *See United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014). Defendants cannot cite to a reasonable suspicion that Jordan committed, was committing, or was about to commit any crime which justified the request to search Jordan's truck, or the search itself. Although disputed, the only allegation was that Jordan "crossed the center line," hardly an offense justifying the search of Jordan's truck.

It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is 'per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions.' *Katz v. United States*, 389 U.S. 347, 357 (1967); *Coolidge v. New Hampshire*, 403 U.S. 443, 454—455 (1971); *Chambers v. Maroney*, 399 U.S. 42, 51 (1970). It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent. *Davis v. United States*, 328 U.S. 582, 593—594 (1946); *Zap v. United States*, 328 U.S. 624, 630 (1946). The constitutional question in the present case concerns the definition of 'consent' in this Fourth and Fourteenth Amendment context.

In *Schneckloth v. Bustamonte* the United States Supreme Court held, "that the question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, <u>is a question of fact</u> to be determined from the totality of all the circumstances." 412 U.S. 218, 227 (1973) <u>emphasis added</u>. In *Schneckloth* the Court noted that the police stopped the vehicle in question based upon alleged traffic violations, but lacked a warrant or probable cause for a search incident to an arrest. *Id*.

The Fourth and Fourteenth Amendments require that a consent not be coerced, by explicit or implicit means, by implied threat or covert force. For, no matter how subtly the coercion was applied, the resulting 'consent' would be no more than a pretext for the unjustified police intrusion against which the Fourth Amendment is directed. In the words of the classic admonition in *Boyd v. United States*, 116 U.S. 616, 635 (1886):

> 'It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their

efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon.'

*Schneckloth* at 228-229.

Ultimately, the Court in *Schneckloth* held "that when the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that the State demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." *Id* at 249. The facts, as detailed and argued herein, demonstrate that Jordan's consent was coerced and the product of threats and coercion.

### d. The scope of the alleged traffic stop and subsequent search violated Jordan's constitutional rights

According to *Terry*, "a law enforcement officer may briefly detain a vehicle, consistent with the Fourth Amendment, when the officer has reasonable suspicion that 'criminal activity may be afoot.' " *United States v. Gonzalez-Rodriguez*, 456 Fed.Appx. 494, 497-98 (5th Cir. 2012) (per curiam) (*quoting Terry*, 392 U.S. at 30); *see also United States v. Ibarra-Sanchez,* 199 F.3d 753, 758 (5th Cir. 1999) (*citing Terry*, 392 U.S. 1, 88 S. Ct. 1868). To determine the reasonableness of a traffic stop, the Court must examine (1) "whether the officer's action was justified at its inception" and (2) "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 19-20.

"A seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." *Illinois v. Caballes*,

543 U.S. 405, 407 (2005). "[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns." R*odriguez v. United States*, 135 S.Ct. 1609, 1614 (2015). An officer's mission during a traffic stop includes "ordinary inquiries incident to [the traffic] stop," such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez*, 135 S.Ct. at 1615 (citing *Caballes*, 543 U.S. at 408; *Delaware v. Prouse*, 440 U.S. 648, 658–660 (1979)); *see also United States v. Shabazz*, 993 F.2d 431, 435 (5th Cir. 1993) (*quoting United States v. Guzman*, 864 F.2d 1512, 1519 (10th Cir. 1998) ("An officer conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation.")).

In order to prolong a traffic stop in March of 2016 beyond its intended "mission," the Fifth Circuit required (1) that the stop transitioned into a consensual encounter between an officer and individual, *Sanchez-Pena,* 336 F.3d at 441-43 or (2) that a police officer had developed independent reasonable suspicion to justify further detaining the individual, *Shabazz*, 993 F.2d at 435. Thus, Defendant needed some basis (reasonable suspicion or consent) to continue questioning and searching Jordan after he had concluded his activities reasonably related to the traffic stop. *Sanchez-Pena*, 336 F.3d at 441-43; *Shabazz*, 993 F.2d at 435.

    i.    <u>Consensual Encounter</u>

With respect to the first exception, the Fifth Circuit has found that officers may continue to ask questions after activities related to the initial traffic stop have ended as long as a reasonable, innocent person in the driver's position would understand that he or she was free to leave. S*anchez-Pena*, 336 F.3d at 443. In other words, a citizen is effectively consenting to

11

answering a police officer's additional questions. Courts review the totality of the circumstances in evaluating whether an individual would reasonably believe he was free to walk away from an officer. *Id.* at 443; *United States v. Beltran*, 650 Fed.Appx. 206, 207 (5th Cir. May 23, 2016). However, courts have identified certain factors that may be relevant in the analysis: "(1) the threatening presence of several officers; (2) the display of a weapon by an officer; (3) physical touching of the person of the citizen; and (4) the use of language or tone of voice indicating that compliance with an officer's request might be compelled." *Carney v. Brandon Police Dept.*, 624 Fed.Appx. 199, 202 (5th Cir. September 1, 2015) *(citing United States v. Mask*, 330 F.3d 330, 337 (5th Cir. 2003); *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).

The facts of this case indicate that Jordan was surrounded by four (4) or more officers and law enforcement vehicles, which would certainly be threatening to any person. Further, the facts also indicate that Jordan was told he would go to jail if the search was not allowed, and only after several threats and further inducement by a narcotics officer did Jordan "agree" to the search, clearly under duress. Cleary, Jordan did not believe that he was free to leave, nor did Jordan believe he could refuse to allow the search of his truck. Based upon the facts the facts and the law, this was not a "consensual encounter" in accordance with 5th Circuit jurisprudence, and Defendants' Motion for Summary Judgment must be denied.

    ii.    <u>Reasonable Suspicion</u>

Defendant does not argue that there was reasonable suspicion or probable cause for the search of Jordan's truck absent consent, and therefore, Jordan will not discuss the reasonable suspicion element any further, as it is moot.

## **CONCLUSION**

Whether or not the traffic stop was "justified at its inception" is disputed by Jordan. Regardless of the justification of the initial stop, the Defendant lacked reasonable suspicion to extend the time of the stop and request to search the truck, and lacked probable cause to threaten Jordan with incarceration if Jordan did not consent to the search of the truck. An officer's "inarticulate hunches" do not suffice as a basis for reasonable suspicion. *Terry*, 392 U.S. at 22, 88 S. Ct. 1868. The Defendants have put forward no reasonable basis for the search of Jordan's truck, other than they wanted to do it.

In *Schneckloth v. Bustamonte* the United States Supreme Court held, "that the question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact..." 412 U.S. 218, 227 (1973). Based upon the disputed facts, a jury should decide whether the search of Jordan's truck was voluntary, or whether or not the consent was procured through threats, intimidation, and coercion, necessitating that the Defendants' Motion for Summary Judgment be denied.

Respectfully submitted this the 17th day of April, 2017.

                                          **MICHAEL JORDAN, PLAINTIFF**

                                          */s/ Daniel Waide*
                                          DANIEL M. WAIDE
                                          MS BAR NO 103543

Daniel M Waide, MS Bar #103543
Johnson, Ratliff & Waide, PLLC
1300 Hardy Street
Hattiesburg, MS 39401
T: (601) 582-4553
F: (601) 582-4556
dwaide@jhrlaw.net

**CERTIFICATE OF SERVICE**

I, Daniel M. Waide, do hereby certify that I electronically filed the foregoing with the Clerk of court using the CM/ECF system, which will send notification of such filing to all counsel of record.

**THIS** the 17th day of April, 2016.

/s/ *Daniel M. Waide*_____
 Daniel M. Waide, (MSB#103543)
Johnson, Ratliff & Waide, PLLC
1300 Hardy St.
PO Box 17738
Hattiesburg, MS 39404
601-582-4553 (Office)
601-582-4556 (Fax)
dwaide@jhrlaw.net