# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**MICHAEL JORDAN**                                                                 **PLAINTIFF**

v.                                        **CIVIL ACTION NO. 2:16-CV-70-KS-MTP**

**WAYNE COUNTY, MISSISSIPPI,** *et al.*                       **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

For the reasons below, the Court **grants in part and denies in part** Defendants' Motion for Summary Judgment [28]. The Court grants the motion with respect to Plaintiff's First Amendment and Fourteenth Amendment Equal Protection claims, but the Court denies it in all other respects. The Court also **denies** Plaintiff's Motion to Strike [33] **as moot**.

## I. BACKGROUND

This is a Section 1983 case arising from a traffic stop and search of a vehicle. On or about March 14, 2016, Defendant Jody Ashley, the Sheriff of Wayne County, Mississippi, initiated a traffic stop of Plaintiff's vehicle. Defendant claimed that Plaintiff has swerved and/or crossed the center line. During the traffic stop, Defendant asserted that he needed to search the vehicle, but Plaintiff declined to consent, and asked why Defendant needed to search his vehicle. Plaintiff alleges that Defendant then threatened to arrest him if he did not consent to a search. Other officers were present, including narcotics agents of the City of Waynesboro, Mississippi. One of the City narcotics agents took Plaintiff aside to speak with him. After a brief conversation,

Plaintiff acquiesced to the search. Officers searched his vehicle, found nothing, and the traffic stop concluded.

Plaintiff filed this suit against Wayne County, Mississippi, and Sheriff Jody Ashley in both his individual and official capacities. Plaintiff believes that Defendant Ashley initiated the traffic stop in retaliation for Plaintiff's failure to support him in the most recent election. Plaintiff claims that Defendants violated a variety of his constitutional rights. Defendants filed a Motion for Summary Judgment [28], which the Court now addresses.

## II. STANDARD OF REVIEW

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc.*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials,

2

speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

### III. DISCUSSION

#### A. *Conceded Claims*

First, Plaintiff conceded his First Amendment and Fourteenth Amendment Equal Protection claims. Therefore, the Court grants Defendants' motion as to those claims against both Defendants.

#### B. *Individual Capacity Claims Against Defendant Ashley*

Next, Defendant Ashley argues that he is entitled to qualified immunity against Plaintiff's claims against him in his individual capacity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). "Although nominally a defense, the plaintiff has the burden to negate the defense once properly raised." *Poole v. Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

There are two steps in the Court's analysis. First, the Court determines whether the defendant's "conduct violates an actual constitutional right." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). Second, the Court must "consider whether [the defendant's] actions were objectively unreasonable in the light of clearly established law at the time of the conduct in question." *Id.* The Court may address either step first.

3

*Pearson*, 555 U.S. at 236. "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Brumfield*, 551 F.3d at 326. The Court "applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions." *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007). Each Defendant's "entitlement to qualified immunity must be considered on an *individual* basis." *Randle v. Lockwood*, No. 16-50393, 2016 U.S. App. LEXIS 20326, at *11 n. 7 (5th Cir. Nov. 10, 2016) (citing *Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007)).

  1. *Fourth Amendment – Initial Stop*

Plaintiff claims that Defendant's initial traffic stop of his vehicle violated his Fourth Amendment rights. "The stopping of a vehicle and detention of its occupants constitutes a seizure under the Fourth Amendment." *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004). Traffic stops are examined pursuant to the framework provided in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). *Id*. Under *Terry*, "the legality of police investigatory stops is tested in two parts. Courts first examine whether the officer's action was justified at its inception, and then inquire whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop." *Id*. The "touchstone of the analysis is reasonableness," and the Court must "consider the facts and circumstances of each case, giving due regard to the experience and training of law enforcement officers, to

4

determine whether the actions taken by the officers, including the length of the detention, were reasonable under the circumstances." *Id.* at 507.

"The police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot . . . ." *Turner v. Driver*, 848 F.3d 678, 690 (5th Cir. 2017). The officer is required to have a "particularized and objective basis for suspecting legal wrongdoing . . . ." *Id.* The Court "will find that [reasonable suspicion] existed if the officer was aware of facts justifying a reasonable belief that an offense was being committed, whether or not the officer charged the arrestee with that specific offense." *Club Retro LLC v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009); *see also Davidson v. City of Stafford*, 848 F.3d 384, 391-92 (5th Cir. 2017). Therefore, the reasonable suspicion "may be for any crime and is not limited to the crime that the officers subjectively considered at the time they perform an arrest." *Davidson*, 848 F.3d at 392. However, "[t]he facts must be known to the officer at the time of the arrest; post-hoc justifications based on facts later learned cannot support an earlier arrest." *Club Retro*, 568 F.3d at 204. The Court may "consider only the information available to the officer at the time of the decision to stop a person." *Turner*, 848 F.3d at 691.

    a.    **Careless Driving**

Defendant argues that the initial stop was constitutionally permissible because he had reasonable suspicion that Plaintiff had committed a crime. First, he claims that Plaintiff crossed the road's center line in violation of MISS. CODE ANN. § 63-3-1213's prohibition of careless driving. Defendant testified that he witnessed Plaintiff's truck

cross the center line of Azalea Drive in Waynesboro, Mississippi. Exhibit A to Motion for Summary Judgment at 1, *Jordan v. Wayne County, Miss.*, No. 2:16-CV-70-KS-MTP (S.D. Miss. Apr. 3, 2017), ECF No. 28-1; Exhibit B to Motion for Summary Judgment at 5, *Jordan v. Wayne County, Miss.*, No. 2:16-CV-70-KS-MTP (S.D. Miss. Apr. 3, 2017), ECF No. 28-2. Likewise, Defendant's passenger, Steve Smith, testified that he observed Plaintiff's truck "swerve and generally drive in a careless manner. Specifically, the Ford pickup crossed the center line of Azalea Drive." Exhibit D to Motion for Summary Judgment at 1, *Jordan v. Wayne County, Miss.*, No. 2:16-CV-70-KS-MTP (S.D. Miss. Apr. 3, 2017), ECF No. 28-4. However, Plaintiff testified that he never swerved or crossed the center line. Exhibit C to Motion for Summary Judgment at 13, *Jordan v. Wayne County, Miss.*, No. 2:16-CV-70-KS-MTP (S.D. Miss. Apr. 3, 2017), ECF No. 28-3. Therefore, there exists a genuine dispute of material fact on this issue, and summary judgment on this basis is not appropriate.

      **b.**      **Expired Plate**

Next, Defendant argues that the stop was constitutionally permissible because Plaintiff was driving with an expired license plate in violation of MISS. CODE ANN. § 27-19-131. With respect to the license plate, Defendant Ashley testified: "I didn't know it was expired. . . . I didn't pull him over for that." Exhibit B to Response at 6, *Jordan v. Wayne County, Miss.*, No. 2:16-CV-70-KS-MTP (S.D. Miss. Apr. 17, 2017), ECF No. 31-2. Although the reasonable suspicion justifying a stop "may be for any crime and is not limited to the crime that the officers subjectively considered at the time they perform an arrest," *Davidson*, 848 F.3d at 392, "[t]he facts must be known to the officer at the

6

time of the arrest . . . ." *Club Retro*, 568 F.3d at 204. The Court may "consider only the information available to the officer at the time of the decision to stop a person." *Turner*, 848 F.3d at 691. It is undisputed that Defendant did not know that the license plate was expired at the time of the stop. Therefore, the expired license plate does not justify the stop.

        **c.**        **Failure to Yield**

Defendant argues that the stop was constitutionally permissible because he had reasonable suspicion to believe that Plaintiff had failed to yield to the approach of a law enforcement vehicle as required by MISS. CODE ANN. § 63-3-809. Plaintiff testified: "I look back, I see he's got lights on pulling up real fast, so I pull to the side of the road to let him pass, thinking he's getting a call on something. And then once I see him pull in behind me, I pull back out into the road because I knew it wasn't no good in an area with no witnesses, so I pulled on to my shop." Exhibit C [28-3], at 11. Plaintiff admitted that he failed to yield to Defendant because he "had a lot of phone calls of people telling me the sheriff said he was going to get you if that's the last thing he do, so once he pulled me over and I was in this spot with no witnesses, I knew then it wasn't a good idea for me to stop at a place with no witnesses, so I pulled back out in the road so people could see what was happening." *Id.* at 13. It is undisputed, therefore, that Plaintiff pulled off the road to let Defendant pass, but once he realized that Defendant was pulling him over, he pulled back out into the road and continued driving.

Defendant contends that Plaintiff's actions violated this statute:

Upon the immediate approach of an authorized emergency vehicle, when

7

> the driver is giving audible signal by siren, exhaust whistle, or bell, the driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the roadway clear of any intersection and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a law enforcement officer.

MISS. CODE ANN. § 63-3-809(1). The statute only requires drivers to yield when the driver of the authorized emergency vehicle "is giving audible signal by siren, exhaust whistle, or bell . . . ." *Id.* Defendant has not directed the Court to any evidence that he activated his siren when stopping Plaintiff. In his affidavit, he specifically declared that he "activated [his] blue lights," but he did not mention the siren. Exhibit A [28-1], at 2. At deposition, he testified that the "proper procedure" for a traffic stop included "turn[ing] your blue lights on," but he did not mention the siren. Exhibit B [28-2], at 4. He also specifically testified that he turned his lights on when he stopped Plaintiff, but he did not mention the siren. *Id.* at 5. Therefore, in the absence of any evidence that Defendant Ashley activated his siren when stopping Plaintiff, the Court can not find that Plaintiff violated MISS. CODE ANN. § 63-3-809(1). *See United States v. Miller*, 146 F.3d 274, 278-79 (5th Cir. 1998) (where statute did not prohibit the alleged actions of defendant, no justification for stop); *United States v. Lopez-Valdez*, 178 F.3d 282, 288 (5th Cir. 1999) (where statute did not prohibit driving with cracked taillight, officer could not have an objectively good faith belief that he had cause for stop).

      **d.    Objective Reasonableness**

Finally, Defendant Ashley argues that his actions were objectively reasonable, even if Plaintiff can establish that they violated his Fourth Amendment rights. As

8

noted above, when an individual defendant invokes qualified immunity, the Court must "consider whether [the defendant's] actions were objectively unreasonable in the light of clearly established law at the time of the conduct in question." *Brumfield*, 551 F.3d at 326. Defendant Ashley contends that it was objectively reasonable for him to stop Plaintiff because he "personally observed Plaintiff swerving and driving carelessly," and because his passenger also "observed the Plaintiff cross the center line with his truck."

First, when conducting a qualified immunity analysis, the Court considers the information available to the defendant at the time of the alleged constitutional violation. *Freeman*, 483 F.3d at 411. Defendant has not directed the Court to any evidence that he was aware of what his passenger observed when he decided to initiate the traffic stop, or that his passenger's observations otherwise played any role in the decision to stop Plaintiff. Accordingly, Mr. Smith's observations are irrelevant to the objective reasonableness of Defendant's actions.

Defendant contends that his belief that Plaintiff violated the law was still objectively reasonable even if Plaintiff did not actually do so, citing *United States v. Montes-Hernandez*, 350 F. App'x 862, 867 (5th Cir. 2009). There, an officer initiated a traffic stop based on a "perceived violation" of a Texas statute "which prohibits displaying a license plate with a . . . covering . . . or other apparatus that . . . obscures one-half or more of the name of the state in which the vehicle is registered." *Id.* at 863. The car was in motion at the time the officer decided to initiate a traffic stop, and the letters on the license plate were less than two centimeters tall. *Id.* at 863-64. The

9

plaintiff argued that the officer's actions were not reasonable because it was impossible for him to determine whether the frame obscured at least half of the state's name. *Id.* at 868. The Fifth Circuit held that "an officer does not have to determine that a suspect has in fact violated the law" to have an objectively reasonable suspicion that he has done so. *Id.* In light of the specific facts of the case and the district court's finding that "it was a very close call" as to whether the license plate frame violated the law, the appellate court found that the officer had an objectively reasonable suspicion that a traffic violation had occurred. *Id.*

Defendant's reliance on *Montes-Hernandez* is misplaced. That case involved no dispute of material fact. It was undisputed that the license plate frame conformed to the law, and, therefore, that the defendant had not actually committed the traffic violation for which the officer stopped him. *Id.* at 864. The issue was whether the officer's judgment call – determining whether letters less than two centimeters tall on the license plate of a moving vehicle were at least half obscured – was reasonable under the circumstances. *Id.* at 868. This case does not present a close judgment call of that sort. It presents a significantly easier factual dispute: whether Plaintiff crossed the center line or swerved. Plaintiff unequivocally testified that he did not do so, while Defendant and his passenger unequivocally testified that he did.

The jury's role has not been entirely abolished in qualified immunity cases. *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993). "Rule 56 still has vitality in qualified immunity cases if the underlying historical facts in dispute . . . are material to the resolution of the questions whether the defendants acted in an

10

objectively reasonable manner in view of the existing law and facts available to them." *Id.* In other words, "[a] finding of objective reasonableness is not appropriate . . . if the material facts are in dispute . . . ." *Rogers v. Lee County*, No. 16-60537, 2017 U.S. App. LEXIS 5747, at *15 (5th Cir. Apr. 3, 2017) (citing *Lampkin*, 7 F.3d at 435; *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994)).

For these reasons, the Court declines to grant summary judgment in Defendant's favor as to Plaintiff's Fourth Amendment claim arising from the initial traffic stop.

   2.   *Fourth Amendment – Search*

Plaintiff argues that the search of his vehicle violated his Fourth Amendment right to be free from unreasonable searches. Warrantless searches are presumptively unconstitutional unless they fall within an exception to the warrant requirement. *United States v. Iraheta*, 764 F.3d 455, 462 (5th Cir. 2014).

   a.   **Personal Participation**

Defendant first argues that he can not be personally liable for the allegedly illegal search because he did not conduct it. "Personal involvement is an essential element of a civil rights cause of action," *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983), and "supervisory officials may not be found vicariously liable for the actions of their subordinates under § 1983." *Hinojosa v. Livingston*, 807 F.3d 657, 668 (5th Cir. 2015). But "a supervisor may be held liable if there exists either (1) his personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."

11

*Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987).

Plaintiff testified that Defendant "said he needed to search the vehicle." Exhibit C [28-3], at 14. When Plaintiff protested, Defendant allegedly responded: "I'm going to search your vehicle or I will take you to jail." *Id.* at 15. A city narcotics officer, Johnny Smith, allegedly pulled Plaintiff aside and told him "that's just what they do whenever they pull people over, they search them. If you go ahead and let us go ahead and search it, we'll let you go, won't hold you up any longer." *Id.* Plaintiff acquiesced and told Smith they could search the vehicle. *Id.* Plaintiff watched approximately four officers search the vehicle, *id.*, but he did not recall seeing Defendant personally conduct the search. *Id.* at 16.

Defendant provided conflicting evidence as to who conducted the search. First, he testified via affidavit: "I obtained consent from the Plaintiff to search his vehicle, but ultimately City of Waynesboro narcotics agents searched the vehicle." Exhibit A [28-1], at 2. But at his deposition, he plainly testified that his Sheriff's Department conducted the search. Exhibit B [28-2], at 7.

Moreover, at deposition, counsel asked Defendant: "Now, at what point did you make the decision that you wanted to search the truck?" Defendant answered, "Let's see, I believe I got his driver's license, went back, met Johnny Smith . . . ," and "within a few minutes" decided to search the truck. *Id.* at 6. Counsel asked him: "And why would you do that?" *Id.* He answered: "Just for safety – officer safety." *Id.* Finally, counsel asked: "The decision – as I understand it, you're saying the decision to search the truck was made to search for weapons for officer safety?" *Id.* at 7. Defendant

12

answered: "Right." *Id.* Therefore, while Defendant never directly stated that he ordered the search, one could reasonably construe his answers as indicating that he at least participated in the decision to search the truck.

For these reasons, the Court concludes that there exists a genuine dispute of material fact as to whether Defendant was personally involved in the search. Although it is undisputed that he did not actually conduct the search himself, the record contains evidence indicating that he directed or ordered it.

### b. Consent

Defendant Ashley also argues that Plaintiff provided consent for the search. "One of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *United States v. Scroggins*, 599 F.3d 433, 440 (5th Cir. 2010). To satisfy the consent exception, Defendant "must demonstrate that there was (1) effective consent, (2) given voluntarily, (3) by a party with actual or apparent authority." *Id.* Consent can be express or implied. *Id.* at 441-43; *King v. Handorf*, 821 F.3d 650, 654 (5th Cir. 2016). Here, Plaintiff provided consent for the search, but he contends that he did not do so voluntarily.

Defendants have the burden of proving that the consent was voluntary. *United States v. Arias-Robles*, 477 F.3d 245, 248 (5th Cir. 2007).

> A court should consider the totality of the circumstances, focusing on six factors: 1) the voluntariness of the defendant's custodial status; 2) the presence of coercive police procedures; 3) the extent and level of the defendant's cooperation with the police; 4) the defendant's awareness of his right to refuse consent; 5) the defendant's education and intelligence;

13

and 6) the defendant's belief that no incriminating evidence will be found. Although all factors are relevant, none is dispositive.

*Id.*

It is undisputed that Plaintiff was never handcuffed, restrained, or arrested during the traffic stop. Plaintiff testified that he was "surrounded" by officers, Exhibit C [28-3], at 16, but the record contains no evidence that an officer told him he was not free to leave. However, Plaintiff testified that the officers did not return his driver's license until after they had finished the search. *Id.* at 18. Therefore, at the time he gave consent for the search, the officers had his driver's license.

As for coercive police conduct, Plaintiff admitted that no one drew a weapon, searched his person, or otherwise physically seized him during the stop. *Id.* at 17. However, he claims that he was "surrounded" by officers, *id.* at 16, and he testified that Defendant Ashley threatened to arrest him if he did not consent to a search. *Id.* at 15. Defendant Ashley admitted that he told Plaintiff that he could arrest him for careless driving. Exhibit B [28-2], at 7.

Plaintiff appears to have cooperated with the officers, in substantial part. Although he questioned their instructions, he complied with them. The record does not indicate that Plaintiff's intelligence is deficient in any way, and it is undisputed that he understood his right to refuse the search. It is likewise undisputed that the search revealed no contraband.

Finally, the Court notes that Plaintiff testified that he "voluntarily allow[ed] them to search" his vehicle. Exhibit C [28-3], at 15. After Plaintiff refused Defendant

Ashley's request to search the vehicle, one of the city narcotics agents took him "away from everybody else," and told him "that's just what they do whenever they pull people over, they search them. If you go ahead and let us go ahead and search it, we'll let you go, won't hold you up any longer." *Id.* at 15. Plaintiff agreed. *Id.* He then made small talk with one of the officers, *id.*, and let the others complete the search because he "was already late for work." *Id.* at 16.

In the Court's opinion, there exists a genuine dispute of material fact as to whether Plaintiff's consent was voluntary. The Court must consider the totality of the circumstances, and no single fact is determinative. *Arias-Robles*, 477 F.3d at 248. The record contains sufficient evidence to support a jury's finding in either direction, depending on which facts they weighted most heavily. For example, the record contains evidence that Defendant Ashley threatened to arrest Plaintiff if he did not consent to a search, but there is also evidence that Plaintiff acquiesced to a search because he just wanted the traffic stop to end quickly. Plaintiff was never restrained or otherwise informed that he was not free to leave, but the officers held his driver's license, preventing him from leaving. It is not the Court's place to balance these facts against one another and determine what motivated Plaintiff's acquiescence to the search. That task belongs to the jury.

## C. *Claims Against Wayne County*

Plaintiff also asserted the claims discussed above against Wayne County.[1] The

---

[1] Plaintiff also asserted them against Defendant Ashley in his official capacity. When a plaintiff asserts official-capacity claims against a government

15

Fifth Circuit has provided the following summary of the law concerning municipal liability under Section 1983:

> A municipality is not liable under § 1983 on the theory of respondeat superior, but only for acts that are directly attributable to it through some official action or imprimatur. To hold a municipality liable under § 1983 for the misconduct of an employee, a plaintiff must show, in addition to a constitutional violation, that an official policy promulgated by the municipality's policymaker was the moving force behind, or actual cause of the constitutional injury. The official policy itself must be unconstitutional or, if not, must have been adopted with deliberate indifference to the known or obvious fact that such constitutional violations would result.
>
> Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy. A policy is official only when it results from the decision or acquiescence of the municipal officer or body with final policymaking authority over the subject matter of the offending policy.
>
> Although an official policy can render a municipality culpable, there can be no municipal liability unless it is the moving force behind the constitutional violation. In other words, a plaintiff must show direct causation, i.e., that there was a direct causal link between the policy and the violation.
>
> A plaintiff must show that, where the official policy itself is not facially unconstitutional, it was adopted with deliberate indifference as to its known or obvious consequences. Deliberate indifference is a degree of culpability beyond mere negligence; it must amount to an intentional choice, not merely an unintentionally negligent oversight.

*James v. Harris County*, 577 F.3d 612, 617-18 (5th Cir. 2009) (punctuation and

---

official under Section 1983, "the real party in interest is the [government] entity." *Goodman v. Harris County*, 571 F.3d 388, 395-96 (5th Cir. 2009). Therefore, the Court construes Plaintiff's claims against Ashley in his official capacity as claims against the County.

citations omitted).

However, "[w]hen a municipality's final policy and decision maker in a single action directly and intentionally deprives a person of a federal constitutional right, . . . the person need not show that a policy or custom caused his injury in order to recover. In such a case, the municipality's action is deemed to be the direct cause or moving force behind the deprivation of right and injury." *Coggin v. Longview Indep. Sch. Dist.*, 289 F.3d 326, 333 (5th Cir. 2002) (citing *Bd. of County Comm'ners v. Brown*, 520 U.S. 397, 402-04, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)). "To prove liability under the single-incident exception, a plaintiff must at least show (1) that the defendant acted with deliberate indifference by disregarding a known or obvious consequence of his action and (2) that there is a direct causal link between the defendant's action and the deprivation of federal rights." *Waltman v. Payne*, 535 F.3d 342, 350 (5th Cir. 2008). Therefore, a single action by one who establishes governmental policy is sufficient to impose municipal liability in certain circumstances. *Id.* (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1997)).

Under Mississippi law, a county's sheriff is its final policymaker for law enforcement decisions. *Id.*; *Brooks v. George County*, 84 F.3d 157, 165 (5th Cir. 1996). It is undisputed that Defendant Ashley, Wayne County's Sheriff, initiated the traffic stop at issue in this case. As discussed above, there exists a genuine dispute of material fact as to whether he had reasonable suspicion that Plaintiff had committed or was committing a crime at the time he initiated the stop. Likewise, there exists a genuine

17

dispute of material fact as to Defendant Ashley's involvement in the search of Plaintiff's car. Finally, there exists a genuine dispute of material fact as to whether Plaintiff's consent to the search was voluntary or – as Plaintiff argues – coerced by Defendant Ashley's threat to arrest him. Depending on the outcome of these numerous factual disputes at trial, Plaintiff could prove the County's liability under the single-incident exception, given Defendant Ashley's status as the final policymaker in all Wayne County law enforcement matters, and his alleged personal involvement in these events. Accordingly, the Court finds that there exist genuine disputes of material fact bearing on the question of municipal liability.

## IV. CONCLUSION

For these reasons, the Court **grants in part and denies in part** Defendants' Motion for Summary Judgment [28]. The Court grants the motion with respect to Plaintiff's First Amendment and Fourteenth Amendment Equal Protection claims, but the Court denies it in all other respects. The Court also **denies** Plaintiff's Motion to Strike [33] **as moot**.

SO ORDERED AND ADJUDGED this __17th__ day of May, 2017.

　　　　　　　　　　　　　　　　　__s/ Keith Starrett__
　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE